NELSON & WITT *v.* TEXAS CO.

1. APPEAL AND ERROR—INCONSISTENT FINDINGS OF' LAW.
   Where, in case tried without jury, findings of fact are certain, but findings of law are contradictory, judgment is to be taken as consistent with correct finding, and inconsistent conclusion of law is disregarded.

2. SAME—ERRORS AGAINST NONAPPEALING PARTY NOT CONSIDERED.
   Appellate court is not concerned with errors which may have been committed against nonappealing party.

3. SALES—PASSING TITLE—CONTRACTS.
   Under written agreement that defendant oil company would buy oil from plaintiff, that another oil company unable to fulfill its contract with defendant would deliver the oil free and receive credit for it as furnished on its contract, that defendant was to make payment to plaintiff through designated bank, and that plaintiff was to retain title to oil until delivery to defendant, company delivering oil to defendant never had title thereto.

4. Conversion—Breach of Contract.

Where defendant repudiated written agreement under which it purchased oil from plaintiff, and, after delivery to it, assumed that it belonged to another, and refused to pay for it, its action in selling it and converting it into money amounted to conversion.

5. Same—Conversion Defined.

Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.

6. Same—Damages—Market Price.

One whose personal property has been converted by another is entitled to recover market price at time of conversion.

7. Same—Waiving Tort—Assumpsit—Common Law.

At common law one might waive tort and sue in assumpsit in case tort arose out of contract relations between parties, or tort consisted of conversion of plaintiff's property into money or money's worth.

8. Same—Assumpsit—Common Counts.

Where defendant converted plaintiff's oil into money, recovery therefor under the common counts, as for money had and received, was proper.

Error to Muskegon; Vanderwerp (John), J. Submitted June 10, 1931. (Docket No. 82, Calendar No. 35,550.) Decided December 8, 1931.

Case by Nelson & Witt, Inc., a Michigan corporation, against the Texas Company, a Delaware corporation, and others for the conversion of a quantity of crude oil. Judgment for plaintiff. Defendant Texas Company brings error. Affirmed.

*Alexis J. Rogoski,* for plaintiff.

*Bulkley, Ledyard, Dickinson & Wright* (*Harold R. Smith* and *William B. Cudlip,* of counsel), for defendant.

CLARK, J.  Plaintiff, Nelson & Witt, Incorporated, a corporation, sued United Petroleum Company, a Michigan corporation, Simrall Pipe Line Corporation, a Delaware corporation, and The Texas Company, a Delaware corporation, for the price of 18,617 barrels of oil delivered over a period beginning on August 7, 1929, and ending on August 16, 1929, and had judgment in a trial without a jury against the United Petroleum Company and The Texas Company for what the court found to be the market price of the oil as of the time in question, with interest, $24,492.54.  The Texas Company brings error.

We state the facts substantially and as correctly found.

Appellant had a contract with United Petroleum Company (hereafter called the United Company) by which the latter company was to deliver to it a large quantity of oil at approximately regular intervals, or nearly equal daily quantities over a period beginning about August 1, 1929.  Deliveries not being made, Guy B. Bogart, superintendent of the Lockport plant of appellant, and for which plant the oil was required, came to Muskegon.  It was apparent that the United Company could not carry out its contract, although certain of its officers were hopeful, and they suggested that plaintiff had oil. There was, on August 6th, meeting, conversation, negotiation between Crell and Hutchins, proper officers of the United Company, Nelson and Witt, like officers of plaintiff, and Bogart, resulting in an agreement that plaintiff's oil be delivered to appellant, title to remain in plaintiff until such delivery, that the United Company would deliver the oil without charge and would have credit for the oil as furnished on its contract with appellant.  The appellant

was not to pay the United Company but was to pay the price for plaintiff into plaintiff's bank, National Lumberman's Bank of Muskegon.

A writing was prepared and signed in form of letter by United Company to Texas Company, reciting, so far as here important, that plaintiff was to be paid through the bank, on which paper was indorsed an acceptance by Texas Company with the words, "will make payment to National Lumberman's Bank."

Other writings were discussed and agreed upon, but, it being night and attorney not available, they were made the following day, after Bogart had left town. One, in form a letter by United Company to plaintiff, recites that title to the oil was to remain in plaintiff until delivery to Texas Company, and that payment was to be made to the bank for plaintiff.

The other, also in form a letter by the United Company to the bank, expressly directs payment through the bank to plaintiff. On this letter is indorsed acceptance by the bank and by plaintiff.

Simrall Pipe Line Corporation merely ran the oil, was dropped as a defendant during the trial, and is out of the case.

While the oil was being run, Moore, an attorney of appellant, Bogart, and Cottingham, another representative of appellant, came to Muskegon. Moore, professing uncertainty that the bank would accept money, went to the bank, and, without plaintiff's knowledge, obtained from an officer of the bank signature to a writing, in form a letter by the bank to Texas Company, which describes the bank as agent of the United Company with respect to payment for the oil.

The appellant received the oil, which it refined and sold. It has not paid for it. It remitted nothing

to the bank. It takes the position that it bought from the United Company and would, it seems, set off the amount against its claimed damages for the United Company's breach of contract with it. Plaintiff's demand for return of the oil was refused.

The first count of the declaration avers a conspiracy, and the second is the common counts, with bill of particulars.

The findings of fact in this case, tried without a jury, are certain enough, but the conclusions of law are somewhat contradictory. One conclusion of law is that there was not a joint conversion of the oil. In another conclusion of law it is held that the oil was jointly received by appellant and the United Company, and they "were jointly liable to return the same," and this is on the apparent theory of joint conversion. As the judgment is against both the defendants, it is taken to be in keeping with the latter conclusion of law by the trial court and the former inconsistent conclusion of law will be disregarded.

From the judgment against it the United Company has not appealed, so that feature of the case calls for no discussion, this appellate court not being concerned with errors which may have been committed against a nonappealing party. *Lowe* v. *Schuyler,* 187 Mich. 526; *Bowsher* v. *Railway Co.,* 174 Mich. 339.

The contention that appellant's representatives who took part in this matter are not shown to have had requisite authority is without merit and is therefore passed.

Appellant agreed to buy the oil from plaintiff and to pay the plaintiff therefor, through plaintiff's designated bank, the bank to receive for plaintiff. Plaintiff retained title to the oil until delivery to appellant. The United Company never had title.

The United Company was considered to be liable in damages to appellant for breach of contract. The thought that if the United Company could be treated as having the oil with right to receive payment for the same, appellant might retain the price and have some satisfaction for its damages and the United Company corresponding relief, seems early to have become design, for while the oil was being delivered, appellant, in furtherance of the design, procured from an officer of the bank the quoted letter of August 15th, wherein the bank is described as the agent of the United Company to receive payment for the oil, when in truth and fact it was the agent of the plaintiff. This was followed by wilful disregard of plaintiff's title to the oil, the assumption that it was oil of United Company, repudiation of the agreement under which the oil was purchased, and conversion of the oil into money.

This is conversion, which is defined in *Aylesbury Mercantile Co.* v. *Fitch,* 22 Okla. 475 (99 Pac. 1089, 23 L. R. A. [N. S.] 573):

"Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." (Syllabus.)

See, also, *U. S. Cities Corp.* v. *Sautbine,* 126 Okla. 172 (259 Pac. 253, 54 A. L. R. 1152); *Kean* v. *Nat'l City Bank* (C. C. A.), 294 Fed. 214; *Southern Oil Corp.* v. *Waggoner* (C. C. A.), 276 Fed. 487.

Plaintiff was entitled to recover the market price at the time of the conversion, and the finding of the trial court thereon is sufficiently supported by the record.

The court struck out evidence of conspiracy respecting recovery on the first count of the declaration. Recovery here is permitted under the second count, the common counts.

At common law one might waive tort and sue in assumpsit in case the tort arose out of contract relations between the parties or the tort consisted of a conversion of plaintiff's property into money or money's worth. *Plefka* v. *Railway,* 147 Mich. 641.

Passing the matter of contract relations, it is clear that plaintiff's property was converted into money. Recovery therefore is proper under the common counts, the count for money had and received. See *Nelson* v. *Kilbride,* 113 Mich. 637, where the question is fully considered. Also *Aldine Manfg. Co.* v. *Barnard,* 84 Mich. 632.

The evidence is considered only as it bears upon conversion, the basis of recovery, so questions relating to recovery as upon express contract are not important.

Before trial appellant made and filed a motion asserting that there was a separable controversy between it and plaintiff, and that they were citizens of different States, and praying removal of the cause into the Federal court. 28 USCA § 71. The motion was denied. No error is assigned on such denial; in fact, error is expressly disclaimed.

At the conclusion of plaintiff's case and again at the close of all the proofs, appellant made motions, chiefly to nonsuit and to dismiss on the ground of variance and on other grounds, and, as plaintiff declined to dismiss as to either of the defendants and declined to amend the declaration, appellant sought to compel, without success, amendment of the declaration to state a separable controversy as against it. There is in the record no motion for removal and denial thereof on which error is assigned.

The argument comes to this: That the evidence showed a removable case for diversity of citizenship when plaintiff rested and at the conclusion of all the proof; and that, although appellant did not then

ask removal, it may do so later and after judgment on merits, making ground therefor by motion for a new trial by which it seeks to establish error in the rulings of the trial court, by which rulings, it is urged, appellant was deprived of right to make motion for removal. We need not consider the question (see *Great Northern Ry. Co.* v. *Alexander*, 246 U. S. 276 [38 Sup. Ct. 237]; *Golden* v. *Railway Co.*, 39 Mont. 435 [104 Pac. 549, 34 L. R. A. (N. S.) 1154, 18 Ann. Cas. 886]; *Alexander* v. *Railway Co.*, 51 Mont. 565 [154 Pac. 914, L. R. A. 1918 E, 852]; 54 C. J. p. 223), having the opinion that the rulings reviewed under our own practice present no reversible error.

In view of what has been said, many assignments require no discussion. Others, considered, do not call for reversal.

Affirmed.

BUTZEL, C. J., and WIEST, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.